IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SAMUEL UPTHEGROVE,

        Plaintiff,                          OPINION AND ORDER

v.

                                          10-cv-469-slc

ALLEN PULVER,

        Defendant.

In this *pro se* prisoner civil rights lawsuit, plaintiff Samuel Upthegrove alleges that defendant Allen Pulver violated his First Amendment right to free speech by refusing to deliver two catalogs that Upthegrove had ordered from outside the Columbia Correctional Institution, where Upthegrove is incarcerated. After screening the complaint, dkt. 5, this court allowed Upthegrove to proceed on this claim against Pulver. Before the court is Pulver's unopposed motion for summary judgment. Dkt. 17. As explained below, I am staying a decision on the motion and giving the parties two more weeks to provide additional facts to the court.

In November 2010, Upthegrove received instructions on filing submissions related to summary judgment. *Procedure to be Followed on Motions for Summary Judgment*, attached to the pretrial conference order, dkt. 11. As explained in that procedure, because Pulver filed a motion for summary judgment, Upthegrove had to respond by filing a brief with opposing legal arguments, a response to Pulver's proposed findings of fact, along with evidentiary materials that supported his fact responses and proposals. *Procedure*, II.A.1-3. Upthegrove was supposed to propose each fact in a separate paragraph and support each fact by referring to the evidence he had submitted to support it. *Procedure*, II.D.1-2. Upthegrove failed to comply with these procedural rules.

Even though Upthegrove had requested a stay and received an extension of time to file his responsive documents, *see* dkt. 26, he still did not file anything. As a result, on August 26, 2011, I ordered Upthegrove to show cause why this case should not be dismissed with prejudice for lack of prosecution. Dkt. 28. Upthegrove responded on September 9, 2011, stating that although he chose not to file a response to the summary judgment motion, he has not abandoned this lawsuit and he wants his trial. Dkt. 29. In his response, Upthegrove again requested that the court stay the case because of what he deems unsatisfactory access to federal case law at the Wisconsin Resource Center (WRC).

I denied Upthegrove's original motion for a stay (dkt. 22) based on the affidavit of a librarian at WRC, who explained that the facility's library includes Federal Reporter booklets and access to Westlaw services. Dkt. 26. Upthegrove now asserts that he can only request three federal case printouts from Westlaw per week, he is unable to search for federal cases on Westlaw or in the reporters and until recently, he only had time in his schedule to access the library three times a week. Upthegrove explained in his response to the show cause order that he purposefully decided to not respond to the summary judgment motion "rather than making arguments without citing any legal authority." Dkt. 29 at 1. That was a mistake.

Although Upthegrove may not have been able to work visits to the library into his schedule, the library was open to him. According to the WRC librarian, inmates can access the library for three 45-minute periods a day, five days a week. Dkt. 24 at 1-2. If the inmate has a documented court deadline, then he may request an additional 45-minute period per day. *Id.* Similarly, the fact that inmates at WRC can request only three Westlaw printouts per week is not a problem because inmates also can request unlimited copies of recent federal cases from the

2

Federal Reporter booklets at fifteen cents per page, and if they have a documented court date, may request up to six Westlaw printouts a week. *Id.* at 2. Of greater concern is the fact that the Westlaw access available to inmates at WRC is limited to Wisconsin and U.S. Supreme Court cases. The Federal Reporter booklets provided by WRC contain only the most recent federal appellate cases and do not include a searchable digest or index. Therefore, inmates have no means of searching for federal cases either online or in books and only may print federal cases for which they already have citations. Although this limitation may pose a significant obstacle to some inmates and may be something that should be addressed by WRC staff, nonetheless I do not find that it justifies staying this case.

      To the extent Upthegrove is asking for additional time to conduct legal research, that is not necessary. As discussed in the pretrial conference order, a *pro se* plaintiff should devote his efforts to fleshing out the facts of his case and the reasons why he believes he should prevail, not on legal argument. The applicable statutes and case law that govern Upthegrove's claim were explained in the court's screening order. Further, this particular lawsuit is about the First Amendment; the most relevant cases are those of the U.S. Supreme Court, to which Upthegrove had and has access on Westlaw. Beyond that, the court can and does research the applicable case law on its own. As a result, I am denying Upthegrove's second request for a motion to stay this case and I will not grant him an additional extension. Even so, fact questions remain unresolved in this case, which means that each party will have one more brief, limited opportunity to present additional evidence.

      Because the summary judgment motion is unopposed, I must conclude that the facts proposed by Pulver are undisputed to the extent that they are supported by admissible evidence.

*Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994); *Strong v. Wisconsin*, 544 F. Supp.2d 748, 759-60 (W.D. Wis. 2008).  However after reviewing the undisputed facts in light of the applicable legal standard, Pulver has not provided enough admissible evidence to allow the court to make an informed decision on its motion for summary judgment.  Therefore, I am staying a ruling on the motion to allow both parties an opportunity to supplement the record.

From Pulver's proposed findings of fact, I find the following facts to be material and undisputed:

**FACTS**

Plaintiff Samuel Upthegrove is an inmate who was confined at the Columbia Correctional Institution (CCI) in Portage, Wisconsin, at all times relevant to this lawsuit.  Defendant Alan Pulver has been employed by the Wisconsin Department of Corrections as a Correctional Officer at CCI since August 1988.  His responsibilities include supporting unit staff, maintaining security of the institution, safety of inmates on his unit and performing general tasks within the various housing units.

Upthegrove filed a *pro se* complaint in this court claiming that while he was housed in disciplinary segregation at CCI between April 14 and July 14, 2010, Pulver refused to deliver two "Bargain Books" catalogs that he had ordered from outside the institution.

Inmates are limited as to the amount of property, including publications, that they are allowed to possess while in segregation status.  During the time period that Upthegrove was in segregation, CCI's Segregation General Policies and Procedures stated that no catalogs will be offered to inmates in segregation, with the exception of canteen catalogs.  *See* Red Book, Section

VIII. H, page 7, revised 1/28/09.  Pulver relied on that policy in denying Upthegrove the two Bargain Books catalogs while he was in segregation.

Unbeknownst to Pulver at the time, however, department level policy had changed with respect to catalogs.  On April 12, 2010, the Wisconsin Department of Corrections, Division of Adult Institutions (DAI) amended its policy on "Inmate Personal Property and Clothing" to include catalogs as allowable publications in segregation.  *See* DAI Policy Number 309.20.03. CCI had not amended their policies and procedures to comply with the revised DAI policy. Warden Grams eventually revised CCI's policy on August 23, 2010, allowing inmates in segregation to have catalogs but preventing them from ordering any property that is not allowed in the building in which they are housed.  After CCI's August 23, 2010 policy revision, Upthegrove was allowed to have catalogs.

According to Janel Nickel, the Security Director of CCI, placement in segregation provides a safe and secure environment for inmates who demonstrate an unwillingness to follow DOC rules.  The value of segregation depends on consistent application of the principle that good conduct will be rewarded with greater freedom and privileges, while bad conduct will be addressed with a reduction in freedom and privileges.  Limiting an inmate's property while he is in segregation serves to achieve these goals.

Based on Nickel's experience, strict limits must be placed on allowable property for inmates in segregation because inmates in segregation have a tendency to misuse property items to create instruments of escape or weapons, and have used such weapons to attack staff as well as to commit self-harm.  Therefore, unlike inmates in general population, inmates housed in segregation are not allowed to order items from catalogs, except for items from the canteen

catalog. If segregation inmates were allowed to order items that they could not keep in their cells, then CCI would then have to store the items for them, and CCI has limited storage space for inmate property.

Further, staff must search inmate cells regularly, so that the more property that inmates are allowed, the more problematic these searches become. Nickel explains that every piece of inmate mail received at the institution must be searched for contraband; with magazines, catalogs, and other multi-page items, each page must be searched. Given the time-consuming search and the rule preventing segregation inmates from ordering from catalogs, prohibiting the possession of catalogs by segregation inmates helped reduce the time correctional officers spent searching incoming mail.

**DISCUSSION**

**I. Summary Judgment Standard**

The purpose of summary judgment is to determine whether the parties have gathered and can present enough evidence to support a jury verdict in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). Summary judgment is appropriate if there are no genuinely disputed material facts, and if on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The applicable substantive law will dictate which facts are material. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). A factual dispute is "genuine" only if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Roger Whitmore's Auto. Serv., Inc. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005).

In this civil lawsuit, Upthegrove, as the plaintiff, has the burden to prove his claim. He may not simply rest on the allegations in his complaint; rather, he must present specific facts and show what evidence he has that would convince a trier of fact to accept his version of the events. *Hunter v. Amin*, 583 F.3d 486, 489 (7th Cir. 2009); *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005); *Schacht v. Wisconsin Dept. of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). Even so, in deciding Pulver's summary judgment motion, this court must view all facts and draw all inferences in the light most favorable to Upthegrove because he is the non-moving party. *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

**II. First Amendment Claim**

Prisoners have a right under the First Amendment to receive mail, *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), and censorship of a prisoner's written materials may violate this right unless there is adequate justification for it, *King v. Federal Bureau of Prisons*, 415 F.3d 634, 638 (7th Cir. 2005) (reversing dismissal of prisoner's claim that defendants refused to allow plaintiff to purchase book on computer programming because defendants had not shown justification for decision). Generally, when a prison restriction implicates a prisoner's First Amendment rights, the question is whether the restriction at issue is reasonably related to a legitimate penological interest under the test set forth in *Turner v. Safley*, 478 U.S. 82 (1987).

In determining whether a reasonable relationship exists, the Supreme Court usually considers four factors: whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; whether the prisoner has alternatives for exercising the right; what impact the accommodation of the right will have on prison administration; and whether there are other ways that prison officials can achieve the same goals without encroaching on the right. *Id.* at 89. The first factor "can act as a threshold factor regardless which way it cuts." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010).

The Supreme Court has given mixed signals regarding which party has the burden on the first factor. *Compare Beard v. Banks*, 548 U.S. 521 (2006) ("*Turner* requires prison authorities to show more than a formalistic logical connection between a regulation and a penological objective."), *with Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it"). However, this court and the Court of Appeals for the Seventh Circuit consistently have held that prison officials have the initial burden to demonstrate the validity of any decision to limit a prisoner's ability to receive or communicate information. *Singer*, 593 F.3d at 536-37 (once prison officials provide plausible explanation for policy, burden shifts to prisoner to call that explanation into question); *King*, 415 F.3d at 639 ("[T]he government must present some evidence to show that the restriction is justified"); *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005) (imposing burden on prison officials under *Turner* to show that interest was implicated in particular case); *Johnson v. Raemisch*, 557 F. Supp. 2d 964, 972 (W.D. Wis. 2008); *Kaufman v. Schneiter*, 524 F. Supp. 2d 1101, 1109 (W.D. Wis. 2007).

Pulver contends that CCI restricted Upthegrove's access to catalogs for these reasons:

- Limiting property serves as a means of reducing privileges for "bad conduct."

- Inmates in segregation have a tendency to misuse property items to create instruments of escape or weapons. If segregation inmates were allowed to order items that they could not keep in their cells, CCI would then have to store the items for them, and CCI has limited storage space for inmate property.
- Because correctional staff are required to search every page of a catalog for contraband, prohibiting the possession of catalogs by segregation inmates helps reduce time spent searching incoming mail.

General security, punishment/deterrence and staff resource all are legitimate penological interests. *See Turner*, 482 U.S. at 91 (rehabilitation and maintaining security are legitimate penological interests); *Bell v. Wolfish*, 441 U.S. 520, 555 (1979)(reducing contraband is legitimate concern); *Singer*, 593 F.2d at 536 (punishment is a fundamental aspect of imprisonment, and prisons may choose to punish inmates by preventing them from participating in some of their favorite recreations) (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995) ("lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.")); *Jackson v. Frank*, 509 F.3d 389, 391 (7th Cir. 2007) (prison's economic interest in saving staff resources is legitimate). All of this being so, a few facts nonetheless call into question the prison's rationale in this particular case.

Two days before Upthegrove was placed in segregation, DAI amended its policy on "Inmate Personal Property and Clothing" to allow catalogs in segregation. Although Pulver was not aware of this change when he refused Upthegrove his catalogs, the warden at CCI eventually revised the institution's policy on August 23, 2010, allowing inmates in segregation to have

catalogs.  The fact that Pulver failed to follow department level policy is irrelevant.  *See Golden v. Raemisch*, 2010 WL 3123133, *5 (W.D. Wis. Aug. 9, 2010) (finding same in prisoner First Amendment case).  As Pulver correctly points out, "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."  *Scott v. Edinburg*, 346 F.3d 752, 760 (7th 2003).  However, the fact that DAI, and later CCI, changed their policies to lift restrictions on catalogs calls into question whether the restriction actually was a valid and reasonable means of furthering the penological goals identified by Nickel, CCI's security director.

      Although prison officials should be permitted to change or revise policies as they see fit, the changes in this case occurred prior to Upthegrove entering segregation.  Further, the actual connection between some of the prison's stated interests and its ban on catalogs is questionable.  For example, according to Nickel, segregation inmates are not allowed property in their cells because they have a tendency to use them as instruments of escape or weapons.  However, there is no evidence suggesting that Upthegrove actually wanted to order property from the catalogs, and there is no indication that the catalogs themselves posed a risk as a potential weapon or instrument of escape; to the contrary, DAI's policy change indicates that they did not.

      In addition, Nickel avers that banning catalogs helped reduce the amount of staff time spent on searching each page of a catalog for contraband.  Although this may have been true, it was not the case by the time Upthegrove entered segregation.  Given the policy change, it appears that the prison agreed that a less restrictive means *was* available to achieve its penological interests without causing a significant impact on prison administration.  Further, catalogs are quite different from books, which present a particular risk because of the items that may be

10

hidden between potentially hundreds of pages. *Jones v. Salt Lake County*, 503 F.3d 1147, 1158 (10th Cir. 2007) (concluding that ban on ordering books from outside source was logically related to interest in reducing contraband).

Courts "must accord substantial deference to the professional judgment of prison administrators," *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003), particularly on matters of security. *E.g.,Thornburgh v. Abbott*, 490 U.S. 401 (1989) (upholding regulation that prohibited prisoners from receiving publications "detrimental to the security, good order, or discipline of the institution"); *Singer*, 593 F.3d at 536 (deferring to prison staff's assessment that role playing games were detrimental to security); *Koutnik v. Brown*, 456 F.3d 777 (7th Cir. 2006) (deferring to prison staff's assessment regarding gang symbols). However, deference does not imply abdication. *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003). Even under the deferential *Turner* standard, courts have a duty to ensure that a restriction on the constitutional rights of prisoners is not an exaggerated response to legitimate concerns. 482 U.S. at 90-91. As the Court held in *Beard*, 548 U.S. at 535, "*Turner* requires prison authorities to show more than a formalistic logical connection between a regulation and a penological objective." Further, "a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89-90.

Even when prison officials' concerns are legitimate and rational, a restriction may be unconstitutional if there are "obvious, easy alternatives to the . . . regulation that accommodate the right . . . while imposing a de minimis burden on the pursuit of security objectives." *Turner*, 482 U.S. at 98; *see also Lindell v. Frank*, 377 F.3d 655, 659-60 (7th Cir. 2004) (concluding that restriction on receiving clippings was rational, but that it failed to pass Turner because "less

exaggerated responses [were] available to the prison"). Given the changes in policy that occurred at the department level and then at the institution level, it seems that the prison had an easy alternative to accommodate the First Amendment rights of segregation inmates. Although there could be a logical reason why the policy changed when it did and why it could not be applied to Upthegrove earlier, I cannot make that determination without further information. *Lindell*, 377 F.3d at 657-58 ("[I]t might be possible to envision a security justification that would support the defendants' action, [but] we believe that the district court acted prematurely in presuming such a justification.").

Because important questions remain unanswered, at this juncture I cannot grant summary judgment to either side. Although I could deny summary judgment and take this case to trial, at this stage this likely would not likely be an efficient use of anybody's resources; the problem right now is not that facts are disputed, it is that relevant facts are missing from the record. Accordingly, rather than hold a trial, I will invite the parties to supplement the record so that the court can better determine whether to grant or deny summary judgment. Of particular interest to the court is admissible evidence showing what factors caused the decision-makers to change the DAI policy and later the CCI policy, and why those factors were persuasive, particularly in light of the penological interests identified by CCI's security director. Also of interest is any evidence explaining why these changes occurred when they did; why not sooner? The parties remain free to present any other facts they deem relevant to the court's decision on summary judgment.

**ORDER**

IT IS ORDERED that:

(1) A decision on defendant Allen Pulver's motion for summary judgment (dkt. 17) is STAYED pending further input from the parties.

(2) The parties may have until October 3, 2011 to submit, in proper format, additional proposed facts relevant to the pending motion for summary judgment. A party may accompany any newly-proposed facts with brief argument explaining how and why those facts are relevant to the court's concerns.

(3) A party may respond to his opponent's new submissions–and only the new submissions–not later than October 23, 2011.

Entered this 19th day of September, 2011.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge